# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **KENNY THOMAS** | **CIVIL ACTION NO. 05-1214** |
| **VS.** | **SECTION P** |
| **WARDEN BURL CAIN** | **JUDGE DOHERTY** |
| | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Before the court is the petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 by *pro se* petitioner Kenny Thomas on June 20, 2005.[1] Thomas is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, in Angola, Louisiana where he is serving a life sentence imposed following his 1999 conviction for second degree murder entered in the Thirteenth Judicial District Court, for Evangeline Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

---

[1] The petition was signed on June 20, 2005 received and filed on July 1, 2005. However, the undersigned has given petitioner the benefit of the "mailbox rule", deeming the petition filed on the date it was signed, that date representing the earliest date that the petitioner could have presented his pleading to prison authorities for mailing. See *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998).

# STATEMENT OF THE CASE

The petition, its accompanying memorandum, the exhibits submitted by petitioner on December 13, 2005, and the published jurisprudence of the State of Louisiana establish the following relevant facts.

On December 16, 1998 petitioner was indicted and charged the second degree murder by the Evangeline Parish Grand Jury. [rec. doc. 9-2, p.6]. The decedent, Ms. Frank, was petitioner's former girlfriend. Her body was found in a ditch on a country road in Mamou, Louisiana. Petitioner was ultimately tried and found guilty as charged on October 1, 1999. Petitioner filed a Motion for a New Trial and Motion for Post-Judgment Verdict of Acquittal which were denied. [*Id.* at 8-9[2]]. On October 22, 1999, Thomas was sentenced to life imprisonment. [*Id.* at 9].

Thereafter petitioner appealed his conviction to the Third Circuit Court of Appeals where he argued three assignments of error: (1) the trial court erred in denying petitioner's Motion for New Trial based on the recanted trial testimony of Jackie Hayes; (2) the trial court erred in denying petitioner's Motion to Suppress evidence seized from

---

[2] The Motion for New Trial was based on the recanting of her trial testimony by the state's witness, Jackie Hayes. At the hearing on the motion, Ms. Hayes testified that her trial testimony placing petitioner near the scene of the crime was fabricated at the direction of detectives with the Evangeline Parish Sheriff's Office. The trial court rejected this testimony and denied the Motion for New Trial. That Motion was also based on evidence that during a recess on the fourth day of trial the Court heard a juvenile matter concerning the termination of parental rights and a child custody determination. Custody of the child in question was awarded to Joseph Earlis Melvin who was a juror in petitioner's trial. The State of Louisiana, in whose name the termination and custody proceedings had been filed, was represented by another member of the District Attorney's Office. The Court ruled that it was coincidental that the matter arose during the course of the trial and found no connection between the two events. [rec. doc. 9-2, p. 8-9]. In the motion for Post-Judgment Verdict of Acquittal, petitioner argued that the state failed to prove the murder occurred in the parish of prosecution. This motion was also denied. [*Id.*].

petitioner's automobile; and (3) the trial court erred in denying petitioner's Motion for Post-Judgment Verdict of Acquittal based on the state's failure to prove an essential element of the offense, that the murder occurred in the parish of prosecution. [*Id*. at p. 10]. Petitioner's conviction was affirmed by the Third Circuit Court of Appeals in an unpublished opinion dated November 2, 2000. *State of Louisiana v. Kenny R. Thomas*, KA 00-00457 (La. App. 3d Cir. 11/2/2000), 778 So.2d 103 (unpublished). The court rejected petitioner's third assignment of error as procedurally barred under L.C.Cr.P. art. 615 because venue is not an element to be proven at trial, and petitioner had not properly raised the issue of improper venue by pre-trial motion to quash the indictment. [rec. doc. 9-2, p. 43-44].

On some unspecified date, petitioner sought further direct review in the Louisiana Supreme Court. Although petitioner was ordered to supply a copy of the application for supervisory writs he filed in the Louisiana Supreme Court, to date, he has not complied. On November 16, 2001, petitioner's writ application was denied without comment. *State of Louisiana v. Kenny R. Thomas*, 2000-3439 (La. 11/16/2001), 801 So.2d 1073. Petitioner did not seek further direct review in the United States Supreme Court.

On December 2, 2002[3], petitioner filed an Application for Post-Conviction Relief in the Thirteenth Judicial District Court alleging five claims for relief: (1) Ineffective assistance of counsel due to counsel's failure to file a Motion to Quash petitioner's indictment based on lack of territorial jurisdiction; (2) Trial judge abused his discretion when he refused to accept the recanting testimony of Jackie Hayes at the hearing on petitioner's Motion for New Trial; (3) Unconstitutional selection process of Grand Jury foreperson under Article 413(B); and (4) Use of Louisiana's "short form" indictment was unconstitutional since petitioner's indictment did not allege all of the essential elements of second degree murder. [rec. doc. 9-3, p. 19, 21, 24, 30].[4]

Counsel was appointed to represent petitioner and, on July 17, 2003, an evidentiary hearing on the application for post-conviction relief was held.[5]  The hearing was continued to July 31, 2003 in order to secure the testimony of Mr. Stanford, petitioner's

---

[3]The application is signed on July 9, 20002, but is stamped as filed by the Clerk of Court on December 2, 2002.  The Fifth Circuit has not extended the "mailbox" rule to determine the filing date for state habeas applications.  See *Dennis v. Cain*, 2005 WL 3588707, *4-5 (E.D.La. 2005) citing *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) and *Torns v. Mississippi*, 54 Fed. Appx. 592, 2002 WL 31730353 (5th Cir. 2002).  This is so even if state law provides for application of the rule. See *Id.* at *4 fn. 19 citing *Torns*. Instead, the Fifth Circuit instructs that federal courts are limited to determining if the difference in dates merits equitable tolling.  *Id.* citing *Coleman*.  On the record before this court, at present, it does not appear that such an analysis is necessary because without the benefit of equitable tolling, the instant petition appears to have been timely filed.

[4] In his *habeas corpus* petition, petitioner alleges that he raised a claim of "Newly discovered evidence affidavit from Dr. Perron." [rec. doc. 1-1, ¶ 11(a)(3)]. However, the post-conviction application submitted by petitioner does not raise this claim.  In his writ application to the Third Circuit Court of Appeal petitioner claimed that he filed two supplemental applications for post-conviction relief. [*See* rec. doc. 9-3, p. 39].  Petitioner has not provided copies of these pleadings. Nevertheless, this claim was considered by the trial court at an evidentiary hearing conducted on July 31, 2003.

[5]The transcript reveals that after the hearing on petitioner's Motion for New Trial Ms. Hayes was prosecuted for committing perjury at the hearing on the Motion, and that thereafter she pled guilty to that charge, thus conceding that she told the truth at petitioner's trial and lied at the hearing on petitioner's Motion for New Trial. [rec. doc. 9-4, p. 9-10].

trial counsel, and Dr. Perron, the Evangeline Parish Coroner at the time of petitioner's

conviction. [rec. doc. 9-4]. At the conclusion of the hearing, the trial court rendered

judgment as follows:

> Okay, I have been thinking about this for the last couple of
> weeks. I was basically aware of the issues that we were going
> to be confronted with today. I know that Daniel Stanford is an
> excellent attorney, and I know he worked hard on this and
> obviously he might have missed something on the issue of
> venue, but as Mr. Lejeune [prosecutor] says, it is not the
> responsibility or the burden of the State to prove beyond a
> reasonable doubt, it's by a preponderance of the evidence. I
> don't think this of itself is the grounds for me to grant the
> motion. In reviewing the testimony of Dr. Perron, it strikes me
> and it's obvious that all of these issues raised by Dr. Perron
> were presented to a jury. It is very difficult for me, not having
> witnessed the case, not having worked the case and not
> having presided in the case to place myself in the place or in
> the stand of twelve jurors who heard the evidence and
> rendered a verdict. I don't see any new evidence here which
> would entitle me to make the rule which Mr. Kenny Thomas
> wants. The last thing I want to see happen is an innocent man
> get sent to jail and kept in jail for something that he or she did
> not do, but in this case I don't think I've got sufficient
> information for me to grant your motion Mr. Thomas. I'm
> going to deny your motion but I will order that this hearing be
> transcribed so that you can present this in the form of a Writ
> to the Third Circuit .... [rec. doc. 9-6, p. 31-33].

On August 26, 2003, petitioner sought review in the Third Circuit Court of

Appeals. Therein he adopted all arguments presented in his original and supplemental

applications for post-conviction relief and all arguments and authorities presented at the

hearings on July 17 and 31, 2003. [rec. doc. 9-3, p. 38-39].

On October 23, 2003, the Third Circuit granted in part and denied in part

petitioner's writ application noting,

> The trial court failed to rule on three of Relator's assignments
> of error: the grand jury selection process was flawed, the short
> form indictment failed to notice the Realtor of the nature of
> the charge against him, and juror and prosecutor misconduct.
> Therefore, these assignments are improperly before this court.
> Accordingly, this matter is remanded to the trial court for
> disposition of these three assignments of error in accordance
> with La. Code Crim.P. arts. 924 et seq. In all other respects,
> Relator's writ is denied as the remaining assignments of error
> are either repetitive or without merit. See *State v. Kenny
> Thomas*, No. KH-03-01177 (La. App. 3d Cir. 10/23/2003).
> [rec. doc. 9-3, p. 42].

On remand, another hearing was conducted in the Thirteenth Judicial District

Court on January 29, 2004. At that hearing, the court permitted discussion of a claim of

prosecutorial misconduct summarized by petitioner's post-conviction counsel as follows:

> ... there was a juror at the trial who had a pending parental
> rights case going on and was being represented by the District
> Attorney in order to get his child back into his custody.
> According to Mr. Thomas, during the proceedings of the trial,
> at a break, that juror came into Court and with the District
> Attorney being present was awarded custody of a, a minor
> child and what Mr. Thomas is raising is that that creates a
> conflict ... to that juror that was not disclosed ...." [rec. doc. 9-
> 5, p. 7-8].

In discussion with the court, petitioner stated that this issue was raised in his

Motion for New Trial which was denied by the trial court. He also claimed that the issue

was thereafter raised on direct appeal. In response, the court concluded that the claim

should have been raised on direct appeal, further noting that if the issue was raised, the

Third Circuit chose not to rule on the issue, and if the issue was not raised, it was waived. [*Id.* at 20 and 22].

During the hearing, the prosecutor argued that petitioner's claim regarding the grand jury selection process was untimely because there was no pre-trial motion to quash addressing that issue. Rather, the pre-trial motion to quash addressed only the short form indictment issue. That motion, however, was denied by the trial court and the issue was not raised on appeal. Thus, the prosecutor argued that the claims were not reviewable. [*Id.* at 2-3]. In response, defense counsel argued that the issues should be considered in the context of ineffective assistance of counsel, despite the fact that the sole ineffective assistance claim raised by petitioner prior to remand concerned only the territorial jurisdiction issue. [*Id.* at 4-5].

Ultimately, the court denied relief on the remaining claims as follows:

> "You've raised some interesting arguments Mr. Thomas but it appears to me that the attack on the grand jury selection process was not raised timely. The issue of the short form does not really apply in a non-capital case and actually the juror or prosecutorial misconduct it appears to me that in your motion for a new trial that was held after the, Judge Aucoin heard it, denied your motion, this was either presented to the Third Circuit and they chose to do nothing with it or it was not presented to them in which case they ... felt it was not filed timely. Now, this is probably something that you can take up to them that and to review what my decision would be today but my decision today is that I do not find that these ... requests are timely, I don't find there's any merit to them and consequently I'm denying them." [rec. doc. 9-5, p. 22].

On February 27, 2004, petitioner submitted an Application for Supervisory writs to the Third Circuit Court of Appeals in which he set forth the following claims: (1) ineffective assistance of counsel based on counsel's failure to file a pre-trial Motion to Quash based upon lack of territorial jurisdiction; (2) trial court abused its discretion when it refused to accept the recanting testimony of witness Jackie Hayes during the Motion for New Trial; (3) unconstitutional grand jury foreperson selection process; (4) unconstitutional indictment (short-form); (5) flawed grand jury selection process; (6) short form indictment; (7) juror and prosecutorial misconduct. [rec. doc. 9-5, p. 29-30]. Petitioner did not provide argument on these claims. Rather, he adopted the arguments in his post-conviction applications and testimony presented at the January 2004 hearings on his application. [rec. doc. 9-5, p. 30-31]. However, he did provide some original argument with respect to his short form indictment claim. [*Id.* at 31-33].

On May 25, 2004, the Third Circuit found as follows:

> There is no error with the trial court's denial of Relator's application for post-conviction relief. Relator's allegations of ineffective assistance of counsel, which were not raised until the January 2004 evidentiary hearing, are untimely, and he fails to provide an exception to the time limitation as provided by La. Code Crim.P. art. 930.8. Whereas Relator failed to file a pre-trial motion to quash the indictment based on an alleged flawed grand jury foreman selection procedure, the Relator's equal protection claim was waived. See *Deloch v. Whitley*, 96-1901 (La. 11/22/96), 684 So.2d 349. Furthermore, Relator's contention that he was unconstitutionally deprived of due process by the short form indictment is without merit. Accordingly, this portion of Relator's [application] is denied.

> However, the record before this court is deficient regarding Relator's claim alleging juror misconduct. Relator failed to include a copy of the judgment rendered by the trial court denying Relator's motion for a new trial and the hearing transcript of same. Thus, this claim cannot be resolved. Therefore, Relator's requests for review regarding this assignment is denied without prejudice. *State v. Kenny Thomas*, KH 04-00289 (La. App. 3d Cir. 5/25/04). [rec. doc. 9-5, p. 36].

Petitioner apparently did not provide the Third Circuit with the missing documentation required for review of his prosecutorial and juror misconduct claim. Instead, on June 9, 2004, petitioner submitted a writ application to the Louisiana Supreme Court. In that writ application, petitioner set forth substantially the same claims raised in the previous writ application filed in the Third Circuit. [rec. doc. 9-5, p. 42-43]. Rather than setting forth argument on his claims, petitioner again adopted the arguments in his post-conviction applications and testimony presented at the January 2004 hearings on his application in support of relief. [*Id*. at 46 and 49]. However, petitioner did provide some original argument with respect to his short form indictment claim. [*Id*. at 47-49]. The Louisiana Supreme Court denied writs without comment on April 29, 2005. *See State ex rel. Kenny Thomas v. State of Louisiana*, 2004-1625 (La. 4/29/2005), 901 So.2d 1052.

Petitioner's federal *habeas corpus* was filed on June 20, 2005.[6] Petitioner asserts the following claims for relief: (1) Ineffective assistance of counsel due to counsel's failure to file a Motion to Quash petitioner's indictment based on lack of territorial

---

[6]See footnote 1, *supra*.

jurisdiction; (2) Trial judge abused his discretion when he refused to accept the recanting testimony of Jackie Hayes at the hearing on petitioner's Motion for New Trial; (3) Unconstitutional selection process of Grand Jury foreperson under former Article 413(B); (4) Use of Louisiana's "short form" indictment was unconstitutional since petitioner's indictment did not allege all of the essential elements of second degree murder; (5) "Newly discovered evidence" in the form of Dr. Perron's affidavit requires a new trial; and (6) Juror and prosecutorial misconduct.

By Memorandum Order filed on January 27, 2006, petitioner was advised that it appeared that several of his claims were procedurally defaulted. Accordingly, with regard to those claims, petitioner was directed to file a response setting forth allegations demonstrating that federal *habeas* review of petitioner's claims is not barred by the procedural default doctrine, e.g. facts demonstrating cause and prejudice, a miscarriage of justice, or a specific showing that the procedural bar applied in this case is not strictly or regularly applied by the state court or was misapplied in petitioner's case. [rec. doc. 15]. Petitioner has failed to respond to this court's Order.

## LAW AND ANALYSIS

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary

dismissal and cause the petitioner to be notified."  See also *Kiser v. Johnson*, 163 F.3d

326, 328 (5th Cir. 1999) citing  Rule 4, Advisory Committee Notes ("The district court

has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any

answer or other pleading by the state. This power is rooted in 'the duty of the court to

screen out frivolous applications and eliminate the burden that would be placed on the

respondent by ordering an unnecessary answer.'").

Based on the court's review of the pleadings and exhibits attached thereto, it is

recommended that the instant petition be summarily dismissed with prejudice because

petitioner is not entitled to relief.

## I.  Ineffective Assistance of Counsel

In his first claim for relief petitioner argues that his court-appointed attorney was

ineffective when he failed to file a pre-trial motion to quash his indictment based on lack

of territorial jurisdiction as required by Louisiana Code of Criminal Procedure  article

615.[7]  Petitioner argues that  "the state had no evidence allowing the Thirteenth Judicial

District Court territorial jurisdiction to charge and try this case."  That contention is based

on the fact that although the body of the victim was found in Evangeline Parish, there was

no evidence presented establishing that the murder took place in Evangeline Parish.

Petitioner further argues that  "the presumption of prejudice in this instance should be

---

[7]L.C.Cr.P. article 615 provides:
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the
judge alone.  Venue shall not be considered an essential element to be proven by the state at trial,
rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the
evidence and decided by the court in advance of trial.

foregone ..." because counsel's failure to file a pre-trial motion to quash prevented petitioner from raising the claim on direct appeal, where he claims that he would have prevailed had the issue been properly preserved. [rec. doc. 1-3, p. 13-14].

In order to prevail on a claim of ineffective assistance of counsel, a federal *habeas corpus* petitioner must establish that (1) the counsel made errors so egregious that he was not functioning as the "counsel" guaranteed by the sixth amendment and (2) the deficient performance so prejudiced the defense that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.

In this case, it is clear that petitioner cannot establish that he suffered any prejudice as a result of his attorney's failure to raise the venue issue by pre-trial motion to quash. Louisiana jurisprudence establishes that had such a challenge been properly presented, the claim would nevertheless not have afforded petitioner relief on appeal or otherwise; the Louisiana Third Circuit Court of Appeal has expressly rejected the same argument presented by petitioner herein. *State v. Anderson*, 877 So.2d 336 (La. App. 3 Cir. 7/7/04).

In *Anderson*, co-defendants were jointly charged by indictment in Evangeline Parish for

the murders of two victims whose bodies had been found in Evangeline Parish. Both

defendants filed timely pre-trial motions to quash, alleging that the indictment did not

indicate the place of commission of the offenses, and further that there was no evidence

to establish that the murders occurred in Evangeline Parish. After a hearing, the trial

court issued a ruling denying the motions to quash. The defendants filed separate

applications for writ of review in the Third Circuit; the writs were consolidated since both

defendants challenged the trial court's ruling on the motion to quash. The Third Circuit

provided the procedural background to the case on review as follows:

> Although the State did not know where the crime occurred, the judge did
> not agree that the Defendants should be released. He relied on a Mississippi
> Supreme Court case that held that the finding of a dead body in a particular
> county raises presumption or supports an inference that the crime
> occurred in that county. The judge denied the motion to quash, noting that a
> decision to the contrary would invite criminals to commit the 'perfect
> crime' by committing murders in secluded places and dumping the bodies
> in random locations. *Anderson*, 877 So.2d at 340.

In its ruling denying relief to both defendants, the Third Circuit found as follows:

> It was not established that any element of the offenses took place in Evangeline
> Parish. Furthermore, Louisiana law does not address the present situation of when
> it cannot be determined where the crime actually occurred. 'Where the law is
> silent, it is within the inherent authority of the court to fashion a remedy which will
> promote the orderly and expeditious administration of justice. La.Code Crim.P. art.
> 17; *State v. Edwards*, 287 So.2d 518 (La.1973).' *State v. Mims*, 329 So.2d 686,
> 688 (La.1976). *The venue articles require the prosecution of the case in the parish*
> *where the crime has been committed. If the location cannot be determined, it*
> *would serve as an injustice to hold that since the State could not establish the*
> *exact geographical location of a murder, an accused cannot be tried. The*
> *Louisiana Code of Criminal Procedure does not address the factual circumstances*

*presented by this case. Therefore, this court must fashion a remedy which promotes the administration of justice. The testimony indicates both victims were found in Evangeline Parish.* Both victims had been shot and their legs cut off. Other testimony was introduced to establish that the victims lived in St. Landry Parish and the pet of one of the victims was found in St. Landry Parish dead from a gunshot wound. However, the crime scene of the murders has not been located. *As noted, Defendants raised objections to venue in Evangeline Parish arguing that the State failed to meet its burden of proving that any of the elements of the crime of first degree murder occurred in that parish. There is no question that the bodies were found in Evangeline Parish.* There is also no question that the condition of the bodies, when found, indicate that the deceased did not die from natural causes, but in fact met their deaths in a violent manner.

Louisiana Code of Criminal Procedure Article 3 provides that '[w]here no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions.' *While La.Code Crim.P. art. 611 provides generally for venue in criminal cases by placing the burden on the State to prove venue by a preponderance of the evidence, it does not provide for the unique situation where the body of a person is found that is apparently the victim of a homicide in a particular parish, yet there is no evidence of where the offense occurred.*[8] Louisiana Constitution Article 1, § 16 provides in part that 'Every person charged with a crime ... is entitled to an impartial trial held in the parish where the offense or an element of the offense occurred. An element of first degree murder is the 'killing of a human being.' La.R.S. 14:30. It is obvious in this case that the condition of the bodies of Mr. Cook and Ms. Kirby, found in Evangeline Parish, indicate that they were killed. The trial court could logically infer that Mr. Cook and Ms. Kirby were killed where their bodies were found. *Further, pursuant to the authority of La.Code Crim.P. art. 3, it would serve the orderly administration of justice for this court to adopt the presumption that the killing of Mr. Cook and Ms. Kirby occurred in Evangeline Parish, where their bodies, the condition of which indicate foul play, were found and, therefore, venue is proper in Evangeline Parish. To reason otherwise would allow the absurd result of permitting the suspected perpetrators of the murders to escape trial because they had the mental acuity to conceal the place where any acts of the offense*

---

[8] La. C.Cr.P. art. 611 was amended by Acts No. 379, §1 of the 2004 Louisiana Legislature to provide, "If the offender is charged with the crime of first or second degree murder and it cannot be determined where the offense or the elements of the offense occurred, the offense is deemed to have been committed in the parish where the body of the victim was found."

*occurred.  Anderson*, 877 So.2d at 344-45.

The same issue was presented on direct appeal.  The defendants again argued that venue was improper in Evangeline Parish and that therefore, the trial court lacked jurisdiction to try, convict and sentence them.  Noting that a crime scene was never located, that there was no testimony or evidence presented to indicate where the victims were killed, and that no new or additional evidence shed light on where the elements of the offenses occurred, the Louisiana Third Circuit again rejected the claim, expressly finding the claim without merit.  *State v. Surratt*, 932 So.2d 736, 751-752 (La. App. 3rd Cir. 2006).

Thus, even had petitioner's trial counsel filed a timely motion to quash (as did trial counsel in the *Anderson* case), the outcome in petitioner's case would have been no different than the outcome in the *Anderson* case.  Petitioner's claim would have been similarly rejected.  Indeed, since the *Anderson* decision, the Louisiana legislature has expressly approved the result reached by the *Anderson* court, amending Louisiana Code of Criminal Procedure article 611 to provide that "[i]f the offender is charged with the crime of first or second degree murder and it cannot be determined where the offense or the elements of the offense occurred, the offense is deemed to have been committed in the parish where the body of the victim was found."  *See* La. C.Cr.P. art. 611, as amended by Acts 2004, No. 379, § 1.  Since it is manifestly clear from the pleadings and exhibits that petitioner cannot establish any prejudice resulting from his attorney's failure to file a

motion to quash based upon jurisdictional issues, his first claim for relief should be denied and dismissed with prejudice.

## II. New Trial Based on Recanted Testimony of Jackie Hayes

The AEDPA significantly restricts the scope of federal *habeas* review of state court factual findings. A petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *See Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir.2004) ("The AEDPA requires that we presume correct the state court's findings of fact unless the petitioner 'rebuts the presumption of correctness by clear and convincing evidence.'"), *cert. denied*, 543 U.S. 951, 125 S.Ct. 375, 160 L.Ed.2d 270 (2004); *Pondexter v. Dretke*, 346 F.3d 142, 146 & 149 (5th Cir.2003) (holding that, pursuant to § 2254 (e) (1), state court findings of fact are presumed correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence), *cert. denied*, 541 U.S. 1045, 124 S.Ct. 2160, 158 L.Ed.2d 736 (2004); *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir.2003) (holding the same), *cert. denied*, 540 U.S. 1163, 124 S.Ct. 1170, 157 L.Ed.2d 1208 (2004); 28 U.S.C. § 2254 (e) (1).

Under the AEDPA, when a state court's rejection on the merits of a federal claim for relief is premised on that court's factual findings, the proper role for a federal *habeas* court is to review the reasonableness of the state court's ultimate conclusion in light of the evidence before the state court. 28 U.S.C. § 2254 (d) (2); *Gutierrez v. Dretke,* 392

F.Supp.2d 802 (W.D.Tex.2005); *Dowthitt v. Johnson*, 230 F.3d 733, 741.

In his second claim for relief, petitioner argues that the trial court erred when it determined as a factual matter that witness Hayes' recanting testimony was not credible. This finding by the state trial court is presumed correct under the applicable standard of review. On direct appeal, the Third Circuit quoted the trial court's finding on this issue, and then expressly found that the trial court had not abused its discretion in making its credibility determination and on that basis denying petitioner's motion for new trial as follows:

> 'I've listened very carefully to the testimony over here and the testimony, the Court quite frankly is not impressed with Miss, with Miss Jacqueline Hayes' testimony. This woman is not a woman that can be easily intimidated. I, I'm going to reject her testimony. I'm going to accept the testimony of Mr. Ortis and consequently I'm going to deny the Motion for New Trial Based on Newly Discovered Evidence.'

> The Defendant has not shown an abuse of discretion in this instance. The trial judge made a credibility determination and ruled that the 'newly discovered' evidence did not warrant a new trial. This assignment of error has no merit. [*State of Louisiana v. Kenny R. Thomas*, 00-457 (La. App. 3 Cir. 11/2/2000) (unpublished) at p. 7-8; rec. doc. 9-2, at p. 37-38].

Petitioner has offered no evidence, much less clear and convincing evidence, to rebut the finding that Hayes' recanting testimony was not credible. To the contrary, the record amply supports the trial court's credibility determination; after the hearing on petitioner's Motion for New Trial Ms. Hayes was prosecuted for committing perjury at the hearing on the Motion, and that thereafter she pled guilty to that charge. Thus,

conceding that she told the truth at petitioner's trial and lied at the hearing on petitioner's Motion for New Trial. [rec. doc. 9-4, p. 9-10]. Moreover, it has long been established that recanting testimony must be viewed with extreme skepticism. *Graves v. Cockrell*, 351 F.3d 143, 153 (5th Cir.2003). In short, petitioner's second claim for relief should be denied since petitioner has not rebutted the Louisiana courts' presumptively correct factual findings with respect to Hayes' credibility during post-conviction proceedings; petitioner's claim of entitlement to a new trial is therefore without merit.

Finally, to the extent that petitioner additionally suggests that the trial court erred at the hearing on petitioner's Motion for New Trial by not considering the proffered testimony of a defense paid polygraph operator who allegedly testified that Hayes' post-trial polygraph examination indicated that her trial testimony was false, that contention fares no better. There is no federal constitutional right to the admission of polygraph evidence for any given purpose. *Harvey v. Johnson,* 2001 WL 210063, *7 (N.D. Tex. 2001) citing *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) and *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 1264-1265 (1998). Rather, whether evidence that is related to polygraph tests may be admitted in a state proceeding is a matter of state law.[9] *Daugherty v. Dretke*, 2003 WL 23193260, *15 (N.D. Tex. 2003) citing *Weston v. Dormire,* 272 F.3d 1109, 1113 (8th Cir. 2001). For purposes of federal *habeas* review

---

[9]Under Louisiana law, polygraph evidence is inadmissible in criminal trials, but, a trial court has discretion to admit such evidence in post-trial proceedings. *State v. Cantonese*, 368 So.2d 975, 982-983 (La. 1979); *State v. Robertson*, 712 So.2d 8, 34 (La. 1998).

under 28 U.S.C. § 2254, therefore, this court considers only the question of whether the state trial court's ruling in petitioner's case rendered his trial fundamentally unfair. *Daugherty*, 2003 WL 23193260 at *15 citing *Weston*, 272 F.3d at 1113.  A proceeding is "unfair" when it has been "largely robbed of dignity due a rational process." *Id.* quoting *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985).  In light of the fact that Hayes was convicted of perjury in connection with her testimony during the hearing of petitioner's Motion for New Trial, the undersigned cannot find that the court's failure to consider polygraph evidence rendered petitioner's state court proceeding fundamentally unfair.

For these reasons, petitioner's claim of trial court error in connection with the denial of his Motion for New Trial based on the recanted testimony of Jackie Hayes does not warrant federal *habeas corpus* relief.  This claim should therefore be denied and dismissed with prejudice.

### III.  The Selection of the Grand Jury Foreperson

Petitioner challenges his grand jury indictment on grounds that the former version of Louisiana Code of Criminal Procedure article 413(B), which permitted a state judge to pick the grand jury foreperson before all grand jurors had been chosen by lot, was unconstitutional as applied to him because the selection process denied him equal protection and due process.  This court cannot consider these claims, however, because they are procedurally defaulted.

The procedural default doctrine bars federal *habeas corpus* review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51. This doctrine ensures that federal courts give proper respect to state procedural rules. *Id.*

Furthermore, the doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1996). However, a petitioner can rebut this presumption by establishing that the procedural rule is not strictly or regularly followed. *Moore v. Roberts*, 83 F.3d 699 (5th Cir. 1996). The burden in on the petitioner to show that a state did not strictly and regularly follow the procedural bar at the time pertinent to his state court action. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 342, (5th Cir. 1995); *Sones*, 61 F.3d at 416. In bearing the burden, the petitioner must demonstrate that the state failed to apply the procedural bar to claims which are identical or similar to the claims raised by him. *Stokes*, 123 F.3d at 860;

*Amos*, 61 F.3d at 340.

It is undisputed that petitioner never filed a pretrial motion to quash. Rather, petitioner raised his grand jury foreperson claims for the first time during state post-conviction proceedings. However, during post-conviction proceedings the Louisiana Third Circuit Court of Appeals expressly relied on a state procedural rule in declining to reach the merits of petitioner's claims.[10] The court cited *Deloch v. Whitley*, 96-1901 (La. 11/22/96) as the basis for its decision. In *Deloch*, the Louisiana Supreme Court held that claims relating to the selection of grand jurors must be asserted in a pre-trial motion to quash or they are deemed waived.[11]

Petitioner has been given an opportunity to demonstrate that federal *habeas* review of his claim is not barred by the procedural default doctrine; however, petitioner has failed to respond to this court's Order. [rec. doc. 15]. Moreover, any claim that the

---

[10] The last reasoned state court decision on petitioner's claim is the May 25, 2004 decision of the Louisiana Third Circuit Court of Appeals which found that petitioner "failed to file a pre-trial motion to quash the indictment based on an alleged flawed grand jury selection procedure, [and thus, his] equal protection claim was waived. See *Deloch v. Whitley*, 96-1901 (La. 11/22/96), 684 So.2d 349." [rec. doc. 9-5, p. 36, *State of Louisiana v. Kenny Thomas*, KH 04-00289 (La. App. 3d Cir. 5/25/04)]. Similarly, the trial court found petitioner's "attack on the grand jury selection process was not raised timely." [rec. doc. 9-5, p. 22].

The Louisiana Supreme Court did not articulate reasons for its denial of writs. However, where there has been a reasoned state court judgment which explicitly rejects the federal claim on state procedural grounds, subsequent unexplained judgments upholding the previous judgment or rejecting the claim are presumed to rely upon the same ground. In other words, when the last reasoned decision on the claim explicitly relied upon a state procedural default, federal courts must presume that later decisions rejecting the claim "did not silently disregard that bar and consider the merits." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

[11] See also La.C.Cr.P. art. 533 and 535. Article 533 provides in relevant part as follows:
    A motion to quash an indictment by a grand jury may also be based on one or
    more of the following grounds: (1) The manner of selection of the general
    venire, the grand jury venire, or the grand jury was illegal.

Article 535(D) provides that grand jury claims are "waived unless a motion to quash is filed in conformity with" the provisions relating to pre-trial motions to quash.

*Deloch* rule is not strictly or regularly applied by the courts of Louisiana, or that the Third

Circuit misapplied the procedural bar to his substantive claims for relief would be without

merit.

The *Deloch* rule, requiring the filing of a pre-trial motion to quash, is an adequate

and independent ground strictly and regularly applied by the Louisiana state courts to

preclude review of similar claims. *See Deloch v. Whitley*, 684 So.2d 349 (La. 1996);

*State ex rel Tucker v. State*, 2001 WL 23217 (La. 1/5/01); *State v. Robinson,* 754 So.2d

311, 322 (La. App. 2d Cir. 2000); *Roper v. Cain,* 763 So.2d 1, 5-6 (La. App. 1st Cir.

1999).   Moreover, both the United States Supreme Court and the Fifth Circuit  have

procedurally barred claims of discrimination in the selection of the grand jury and its

foreman in the absence of a timely pre-trial motion to quash.  *Williams v. Cain,* 125 F.3d

269, 274-276 (5th Cir. 1997)[12],  *Francis v. Henderson,* 96 S.Ct. 1708 (1976), *Pickney v.*

*Cain,* 337 F.3d 542 (5th Cir. 2003).  *See also Davis v. United States*, 93 S.Ct. 1577 (1973)

(applying default principles to a federal grand jury claim).

Hence, because the state's procedural rule requiring that challenges to the manner

of selection of the grand jury venire is an adequate and independent ground strictly and

---

[12]  The *Williams* court found as follows:
   "It is undisputed that Williams never filed a pretrial motion to quash, let alone a
   timely motion. Williams raised his claim based on the selection of the grand jury
   foreman for the first time during his state post-conviction proceedings.
   Therefore, under Louisiana law his claim is procedurally barred. *Deloch v.*
   *Whitley*, 684 So.2d 349, 350 (La.1996) (holding equal protection claim based
   upon discriminatory selection of grand jury foreman procedurally barred by
   defendant's failure to file a pretrial motion to quash)." *Williams*, 125 F.3d at 275.

regularly applied by the Louisiana state courts to preclude review of similar claims, unless petitioner demonstrates cause and prejudice for his default or actual innocence, federal *habeas* review is precluded. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Sones v. Hargett*, 61 F.3d 410 (5th Cir. 1996); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Gray v. Netherland,* 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); and *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

In order for a *habeas* petitioner to be excused from application of the procedural default doctrine by showing cause and prejudice, the petitioner must show that "some objective factor external to the defense" prevented the petitioner from properly raising the claim in state court. *McClesky v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) quoting, *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645. Thus, cause requires an impediment external to the defense. *Id*.

In order for a *habeas* petitioner to avoid a procedural bar by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496, 498; *Corwin v. Johnson* 150 F.3d 467, 473 (5th Cir. 1998); *Glover v. Cain*, 128 F.3d 900, 904 (5th Cir. 1997); *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471 (1993). To

support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he has been convicted. *Corwin*, 150 F.3d at 473; *Ward*, 53 F.3d at 108; *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999). Moreover, the petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Fairman,* 188 F.3d at 644 citing *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

"[A] federal district court may, in the exercise of its discretion, raise a *habeas* petitioner's procedural default, *sua sponte* and then apply that default as a bar to further litigation of petitioner's claims." *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998). As noted previously, petitioner has been placed on notice that the procedural default doctrine may be applicable herein by virtue of the undersigned's January 27, 2006 Memorandum Order. [rec. doc. 15]. That Order permitted petitioner an opportunity to demonstrate that federal *habeas* review of his claims was not barred by the procedural default doctrine by setting forth facts demonstrating cause and prejudice or that the denial of habeas review would constitute a miscarriage of justice because of petitioner's actual innocence. However, petitioner has failed to submit any response to this court's Order addressing this court's procedural default concerns.

The court is not required to examine the prejudice prong of cause and prejudice if petitioner has failed to demonstrate cause. *Saahir,* 956 F.2d at 118. Petitioner has failed

to demonstrate cause. Accordingly, the undersigned will not undertake an examination of prejudice. Petitioner has failed to demonstrate cause and therefore should not be excused from application of the procedural default doctrine on this basis.

Petitioner also has not shown as a factual matter that he is actually innocent of the second degree murder of Katrina Frank and thus, he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims. Accordingly, Petitioner cannot avoid procedural default on grounds of actual innocence.

Because petitioner has failed to demonstrate cause for his default, or that failure to consider his claims will result in a fundamental miscarriage of justice, petitioner's claims directed at the constitutionality of the former grand jury selection process should be denied and dismissed with prejudice because his claims are barred by the doctrine of procedural default.

## IV. "Short-Form" Indictment

In his fourth claim for relief, petitioner argues that his second degree murder prosecution was instituted via a defective and insufficient indictment. Petitioner concedes that his indictment was in compliance with the requirements of Louisiana Code of Criminal Procedure article 465, authorizing the use of "short-form" indictments in second degree murder prosecutions, but claims that the statute "denies the accused of the right to be informed of the nature and cause of the accusations against him ..." because it "allows an accused to be indicted without being provided the specifics of the accusations

against him."

The sufficiency of a state indictment is appropriate for federal *habeas* relief only when the indictment is so deficient that the convicting court was without jurisdiction. *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994) citing *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir.1993). State law dictates whether a state indictment is sufficient to confer a court with jurisdiction. *Id.* If the question of the sufficiency of an indictment has been presented to the state's highest court of appeals, then consideration of the question is foreclosed in federal *habeas corpus* proceedings. *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir.1988); *Hines v. Louisiana*, 102 F.Supp.2d 690, 695 (E.D.La. 2000) citing *Morlett,* 851 F.2d at 1523; *Decker v. Johnson*, 2001 WL 520828, *8 (N.D.Tex. 2001) citing *Morlett*, 851 F.2d at 1523 and *Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir.1985); *Dowell v. Lensing*, 805 F.Supp. 1335, 1343 (M.D.La. 1992) citing *Morlett*, 851 F.2d at 1523.

When reviewing this claim, the Louisiana Third Circuit Court of Appeals expressly rejected petitioner's claim finding petitioner's "contention that he was unconstitutionally deprived of due process by the short form indictment ... without merit." [Rec. doc. 9-5, p. 36]. Petitioner then presented this claim to the Louisiana Supreme Court, the highest court in the state which has jurisdiction to review a petitioner's conviction. That court implicitly adopted the Louisiana Third Circuit Court of Appeals' finding and rejected petitioner's contention that the indictment was fatally

defective when it denied relief without comment. *State ex rel. Kenny Thomas v. State,* 2004-1625 (La. 4/29/05), 901 So.2d 1052. *See Dowell,* 805 F.Supp. at 1343; *Hines,* 102 F.Supp.2d at 695; *Morlett,* 851 F.2d at 1523; *Decker*, 2001 WL 520828 at *8. Thus, petitioner is foreclosed from seeking relief on this ground in a federal *habeas* proceeding. By refusing to grant petitioner relief, the Louisiana Supreme Court necessarily, though not expressly, found that the indictment was not fatally defective. Hence, the trial court had jurisdiction, and the indictment was sufficient for that purpose. *Decker*, 2001 WL 520828 at *8 citing *Alexander,* 775 F.2d at 599 and *Smith v. McCotter,* 786 F.2d 697, 702 n. 3 (5th Cir.1986); *Dowell*, 805 F.Supp. at 1343; *Hines,* 102 F.Supp.2d at 695; *Morlett,* 851 F.2d at 1523.

Moreover, the Louisiana courts properly rejected petitioner's claim. Contrary to petitioner's allegations, Louisiana's short form indictment for second degree murder does not require that elements of the offense be alleged, nor does it require that the specific subsection of the second degree murder statute allegedly violated be set forth. *See* La.C.Cr.P. art. 465(32).[13] That form has been consistently held to pass constitutional muster by the Louisiana state and federal courts. *State v. Richthofen,* 803 So.2d 171, 193 (La. App. 5th Cir. 2001) citing *State v. Taylor,* 781 So.2d at 1218, *State v. Baylis,* 388

---

[13] Louisiana Code of Criminal Procedure article 465(32) provides a short form indictment for second degree murder as follows:

"A.B. committed second degree murder of C.D."

So.2d 713, 718-719 (La.1980) and *State v. Liner,* 373 So.2d 121, 122 (La.1979)[14]; *Liner v. Phelps*, 731 F.2d 1201 (5th Cir. 1984) (first degree murder "short form" indictment[15]); *See also Haggins v. Cain*, 2006 WL 1831529 (W.D. La. 2006) (rejecting a claim of ineffective assistance of counsel based on failure to file a motion to quash second degree murder "short-form" indictment because the constitutionality of the "short-form" indictment has been consistently upheld).

Moreover, under the facts of this case, there is no basis to find that petitioner was deprived of his Sixth Amendment right to be informed of the nature and basis of the charge against him. It is true that the Sixth Amendment is applicable to the States through the Fourteenth Amendment. *Dowden,* 805 F.Supp. at 1343 citing *Spinkellink v. Wainwright*, 578 F.2d 582, 609 n. 32 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). It is also true, at least in the context of federal *habeas corpus* review, that the question of whether the accused was denied the right to be informed of the charge against him does not turn exclusively upon the content of the indictment or information. *Id*. A habeas petitioner's constitutional right to notice of the charge brought against him can be satisfied by the availability of other means of obtaining notice of the factual or legal basis of the charge against him, such as a bill of

---

[14]When those forms are used, it is intended that a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars. See *Richthofen,* 803 So.2d at 193 citing *State v. Taylor,* 781 So.2d at 1218.

[15]Louisiana Code of Criminal Procedure article 465(31) provides a short form indictment for first degree murder as follows:
"A.B. committed first degree murder of C.D."

particulars, a preliminary examination and criminal pre-trial discovery. *Id.* citing *Liner v. Phelps*, 731 F.2d 1201 (5th Cir.1984). The exhibits submitted by the petitioner herein demonstrate that petitioner, through his trial counsel, was afforded adequate notice of the nature of the charges against him via criminal pre-trial discovery. At the evidentiary hearing on petitioner's post-conviction application on July 31, 2003, petitioner's counsel, Mr. Daniel Stanford, testified that "the District Attorney's Office, Mr. Lejeune, provided me with open file discovery ... basically everything he had in his file he made available to me ...." [Rec. doc. 9-6, p. 5]. Moreover, Stanford testified that "Mr. Lejeune (the prosecutor) was very liberal in giving me all of the material necessary to prepare for the case." [*Id.*, p. 7].

Since the state court had jurisdiction under the "short-form" indictment, and since the petitioner's exhibits clearly establish that he was provided notice concerning the particulars of the charged offense, petitioner's claim must be denied and dismissed with prejudice. There is no basis for federal *habeas* relief to be granted with respect to this claim.

## V. Dr. Perron's Affidavit (Newly Discovered Evidence)

Petitioner claims that he was examined by then Evangeline Parish Coroner, Dr. Roderick P. Perron, shortly after he was arrested, and that Dr. Perron found no evidence of any struggle, and therefore, Dr. Perron believed that petitioner could not have been the perpetrator of the crime. Petitioner further claims that Dr. Perron found no stains on the victim's clothes, although these stains were depicted in photographs taken by Detective

Demourelle.  This information is reflected in affidavits submitted by Dr. Perron, dated

January 16, 2003, November 5, 2004 and November 8, 2004. [rec. doc. 1-4].  Petitioner

argues that this evidence was not presented at his trial and accordingly, constitutes

"newly discovered" evidence, which should have entitled petitioner to a new trial.

This claim was apparently raised in one of petitioner's "supplemental"

Applications for Post-Conviction Relief filed in the trial court.  This claim was addressed

by the trial court in the evidentiary hearing held on July 31, 2003.

At the hearing, defense counsel, Mr. Stanford testified regarding the alleged

newly discovered evidence as follows:

> Q. ... Mr. Fontenot will be calling Doctor Perron to the stand shortly, and
> I'm anticipating that he's gonna be talking about certain grease stains that
> were – a grease stain that was found on the victim's clothing?
> A.  Yeah, that was discussed at trial.
> Q.  But that was extensively discussed at trial?
> A.  Yes it was.
> Q.  Okay the fact of that the defendant's automobile which had been stored
> in American Auto Salvage, at some point and time – uh – apparently the
> trunk lid had been tampered with?
> A. If I recall at trial the issues, I recall that we were – uh – arguing or what
> I was raising in cross examination of the witness, I remember discussing
> with Detective Demourelle that the vehicle was housed in an unsecured
> area and the trunk was unlocked which meant that – uh – anybody could
> have had access to it.  I think that there was also testimony that Detective
> Demourelle was the sole custodian of the evidence and – uh – basically he
> took it from the autopsy and from there we don't know what he did with it
> later.  I believe it was – uh – stored in an evidence paper bag.
> Q.  Okay those issues were extensively covered at trial?
> A.  That's right.
> Q.  Okay the third item was – uh – Doctor Perron stated that there were no
> defensive marks on the defendant's hands when he examined him here at
> the Sheriff's Department?

A.  I seem to recall that Detective Demourelle brought Mr. Thomas in to have him examined by Doctor Perron, and Doctor Perron, I believe, made him strip and examined his hands, his fingernails, his back, his anatomy to look for a defensive – uh --not defensive, but marks possibly that the victim may have left on Mr. Thomas.  Uh – he didn't see any marks and I don't think that there were any DNA matches from the victim's – uh – fingerprints that were – that could be attached to Mr. Thomas.

Q.  And, of course, you – you examined Doctor Perron and questioned him about this at trial extensively as did the State?

A.  Yeah ....  [rec. doc. 9-6, p. 12-13].

Moreover, at the hearing, the prosecutor who tried the case read excerpts from Dr.

Perron's trial testimony which are consistent with defense counsel's testimony as

follows:

May it please the Court, let me address first of all three items brought up by Doctor Perron. Okay, first the record will reflect that those items were brought out at trial ... on several occasions, well at Page 909 of the transcript I'm questioning Doctor Perron:

'Q. ... you examined the defendant at the Sheriff's Office?
A. Yes.
Q. I understand he took his shirt off and you examined him for any types of scratches, bruises and so on?
A. That's correct.
Q. After you examined him did you find any evidence of any type of struggle?
A. No.' [rec. doc. 9-6, p. 28].

*          *          *

--the grease marks, that's Page ... 933 of the trial transcript ... and I forgot who was examining Doctor Perron then, but I think it was it was Mr. Stanford, yes Mr. Stanford.

Q.  While you examined the body at the scene, did you notice a grease stain on her clothing?
A. ... I didn't, not at that time.  Uh – if I had seen it at the time I would

31

have taken a picture. [rec. doc. 9-6, p. 28-29].

*           *           *

Okay so – you know – we went through that extensively. You know – we went through that extensively. The broken lock at American Salvage yard, there were photographs shown to the jury – you know – of the missing keyhole in the defendant's trunk. Mr. Stanford went through that extensively, so those three items and that affidavit by Dr. Perron, the scratch marks or lack of scratch marks, the grease stain or lack of grease stain, and the trunk of the car were all extensively covered by Mr. Stanford and the jury still convicted him, okay. So this is nothing new .... [rec. doc. 9-6, p. 29].

Moreover with respect to the grease stains, Mr. Lejeune stated that in Mr. Stanford's questioning of Dr. Perron, he asked "Did you notice any grease stains on her clothing?" to which Doctor Perron responded, "No I didn't." He additionally noted that the victim's shirt was introduced into evidence. [rec. doc. 9-6, p. 19].

Doctor Perron also testified at the hearing. However, for the most part, the doctor did not recall his trial testimony. The doctor testified that although he could not remember being questioned about scratches on the victim or petitioner, he was "sure [he] probably was." [rec. doc. 9-6, p. 17]. With respect to oil or grease stains on the victim's shirt, the doctor remembered being shown a picture that the detective had taken of the stain on the victim's clothing which the doctor did not see at the time of the autopsy. Dr. Perron remembered being asked if he could "explain the difference" and that he responded that "[he] couldn't." [rec. doc. 9-6, p. 23].

32

At the conclusion of the evidentiary hearing, the trial court found, "In reviewing the testimony of Doctor Perron, it strikes me and it's obvious that all of these issues raised by Dr. Perron were presented to a jury ... I don't see any new evidence here which would entitle me to make the rule which Mr. Kenny Thomas wants ...." Accordingly, petitioner's claim was denied. [rec. doc. 9-6, p. 31-32].

Petitioner sought review of the trial court's ruling in his August 26, 2003 writ application to the Louisiana Third Circuit Court of Appeals. [rec. doc. 9-3, p. 38-39]. On October 23, 2003, the Third Circuit denied petitioner's claim finding the claim without merit.[16] However, because the trial court failed to address petitioner's grand jury foreperson, short-form indictment and juror and prosecutorial misconduct claims, the court remanded the case to the lower court for disposition. [rec. doc. 9-3, p. 42]. Petitioner did not seek immediate review of this claim in the Louisiana Supreme Court. Rather, the case was remanded, and a hearing on the remaining claims was conducted by the trial court, which on January 29, 2004 denied those remaining claims. [rec. doc. 9-5, p. 2-23]. Thereafter, petitioner again sought review in the Louisiana Third Circuit Court of Appeals. However, in his February 27, 2004 writ application, petitioner did not seek review of his newly discovered evidence claim. [*See* rec. doc. 9-5, p. 29-30]. Moreover,

---

[16]With the exception of the three unaddressed claims which were remanded to the trial court, the Third Circuit found that petitioner's remaining claims were "either repetitive or without merit." It is clear that unlike petitioner's claim regarding the recanted testimony of Jackie Hayes, petitioner's claim of newly discovered evidence based on Dr. Perron's affidavits was not previously raised on direct appeal as the affidavits post-date the appellate court's decision on direct appeal affirming petitioner's conviction. Thus, this claim could not have been found repetitive, but rather, was found without merit.

after the Third Circuit's May 25, 2004 writ denial, petitioner did not seek review of his

newly discovered evidence claim in the Louisiana Supreme Court. To the contrary, in

his June 9, 2004 writ application to the Louisiana Supreme Court petitioner listed the

"Issues and Questions of Law Presented" as follows:

> (1) Whether the Court of Appeals erred by refusing to consider Relator's
> Application for Supervisory Writ of Review regarding the following issues
> (2) Whether the trial counsel was ineffective for failing to file pre-trial
> Motion to Quash Indictment, based on lack of territorial jurisdiction?
> (3) Whether the trial judge abused his discretion when he refused to accept
> Jackie Hayes' testimony during the hearing on Motion for New Trial?
> (4) Whether Mr. Thomas' Constitutional rights under the Sixth and
> Fourteenth Amendment were violated when the Louisiana District Court
> Unconstitutionally selected the foreperson from the grand jury venire
> before the remaining members of the grand jury were chosen by lot in
> violation of La.C.Cr.P. Art. 413(B).
> (5) Whether petitioner's conviction and sentence is unconstitutional and in
> violation of petitioner's constitutional and statutory rights because they do
> not rest upon a valid and sufficient Statute and Indictment, in violation of
> C.Cr.P. Art. 872, and Art. 465, which denied the accused the right to be
> informed of the nature and cause of the accusations against him, and no
> Bill of Particulars was filed?
> Pro Se Supplemental Claims
> (1) The Grand Jury selection process was fatally flawed;
> (2) The short form Indictment failed to notice the Relator of the nature of
> the charges against him;
> (3) Juror and Prosecutor misconduct. [rec. doc. 9-5, p. 42-43].

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot

collaterally attack his state court conviction in federal court until he has exhausted

available state remedies. 28 U.S.C. §2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102

S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir. 1983);

*Mercadel v. Cain,* 179 F.3d 271, 275 (5th Cir. 1999); *Fisher v. Texas,* 169 F.3d 295, 302

(5th Cir.1999); *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir.1998). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his claim to the state courts. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004). Moreover, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court, in a procedurally proper manner, even when review by that court is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) citing *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985); *Mercadel,* 179 F.3d at 275 citing *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988). In Louisiana, the highest court is the Louisiana Supreme Court.

As demonstrated above, petitioner did not properly or fairly present his newly discovered evidence claim to the Louisiana Supreme Court. Contrary to the requirements of Louisiana Supreme Court Rule X, Section 4[17], petitioner did not list the claim as an assignment of error, or an issue or question of law for review, nor did he present any argument with respect to such a claim. Rather, petitioner apparently attempted to adopt and incorporate the arguments contained in his briefs presented to the lower courts. However, the United States Supreme Court has held that "a state prisoner

---

[17]Louisiana Supreme Court Rule X, Section 4 sets forth the requirements of criminal writ applications, mandating that a memorandum be submitted setting forth assignments of error and "an argument of each assignment of error ...."

does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief ... that does not alert it to the presence of a federal claim in order to find material ... that does so." *Baldwin*, 124 S.Ct. at 1351. Moreover, vague or fleeting references tacked on to the end of another argument in a state court brief does not sufficiently afford the state court the opportunity to address an alleged violation of federal rights and hence, does not constitute a "fair presentation" for exhaustion purposes. *Wilder,* 274 F.3d at 260. Thus, the Louisiana Supreme Court was denied a fair opportunity to consider petitioner's claim and petitioner's claim therefore remains unexhausted.

When a petitioner fails to timely and properly present his claims to the Louisiana Supreme Court and is time-barred from seeking further relief in the Louisiana courts because he has allowed his state court remedies to lapse, those claims are "technically exhausted" but nevertheless procedurally defaulted. *Wilder,* 274 F.3d at 262 citing *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir.2001); *Magouirk,* 44 F.3d at 357 citing *Coleman,* 501 U.S. at 731-33, and 735 at fn. 1, 111 S.Ct. at 2546; *Bledsue v. Johnson,* 188 F.3d 250, 254-55 (5th Cir. 1999) citing *Coleman*, 501 U.S. at 735 n. 1 and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728 (1999); *Sones,* 61 F.3d at 416; *Fuller* v. *Johnson,* 158 F.3d 903, 905-06 (5th Cir. 1998). In such a case there is no difference between non-exhaustion and procedural default. *Id.*

In the instant case, the state court to which petitioner would be required to return to meet the exhaustion requirement would now find the claims untimely.[18]  Hence, for purposes of federal *habeas corpus* review, the claims are "technically" procedurally defaulted.  This court may therefore refuse to review petitioner's claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine by showing cause and prejudice for the default or that a miscarriage of justice will result from the denial of federal *habeas* review. *See Finley*, 243 F.3d at 220-221; *Moore v. Roberts,* 83 F.3d 699 (5th Cir. 1996); *Coleman, Harris, McCleskey, Gray, Sones, Murray, Glover, Corwin, Fairman, Ward,* and *Callins, supra.*

As noted previously, petitioner has been placed on notice that the procedural default doctrine may be applicable herein by virtue of the undersigned's January 27, 2006 Memorandum Order.  [rec. doc. 15].  That Order permitted petitioner an opportunity to demonstrate that federal *habeas* review of his claims was not barred by the procedural default doctrine by setting forth facts demonstrating cause and prejudice or that the denial of *habeas* review would constitute a miscarriage of justice because of petitioner's actual innocence.  However, petitioner has failed to submit any response to this court's Order addressing this court's procedural default concerns.

Because petitioner has failed to demonstrate cause for his default, or  that failure to consider his claim will result in a fundamental miscarriage of justice, petitioner's

---

[18]*See* Louisiana Supreme Court Rule X, §5(a) providing thirty days from the mailing of the appellate court judgment to seek review in the Louisiana Supreme Court.

claim should be denied and dismissed with prejudice because his claim is "technically" procedurally defaulted.

However, even if this court were to reach the merits of this claim, petitioner fares no better. As shown above, the district court found, as a matter of fact, that the issues raised by Dr. Perron in his post-trial affidavits were addressed in the trial on the merits, and on that basis, the Third Circuit found petitioner's claim to be without merit. This finding is amply supported by the record presently before the court. The above cited passages from the evidentiary hearing conducted on July 31, 2003 clearly support the state court's ruling. Moreover, petitioner's appellate brief on direct appeal belies petitioner's argument.[19] As with Claim Two above, petitioner has offered no evidence, much less clear and convincing evidence, to rebut the trial court's fact finding with respect to this claim. Moreover, on the record before this court, it is clear that the state court's decision was not an unreasonable determination of the facts, in light of the evidence presented. Therefore, under the applicable standard of review, petitioner is not entitled to federal *habeas corpus* relief.

---

[19]In his brief to the Louisiana Third Circuit Court of Appeal, petitioner cites numerous portions of Dr. Perron's trial testimony in which he testified that he found no "abrasions, contusions, evidence of a struggle", no "evidence of any injuries on his [petitioner's] hands", no "marks, scratches or swelling", no "discoloration ... caused from a bruise", and no evidence of any "defensive wounds" during his examination of petitioner. [rec. doc. 9-2, p. 19-20 citing trial transcript pgs. 949 and 950]. Dr. Perron testified that he performed this extensive examination of petitioner because he "wanted to rule him [petitioner] in or rule him out." [*Id.* citing tr. trs. p. 952]. Moreover, Dr. Perron testified that he gave Detective Demourelle his opinion that petitioner did not commit the murder." [*Id.* citing tr. trs. p. 953].

**VI. Juror and Prosecutorial Misconduct**

Petitioner's final claim for relief involves the alleged professional relationship between a member of the District Attorney's Office, Anthony "Tony" Walker, and one of the jurors in petitioner's case. According to petitioner, this prosecutor represented the juror in an unrelated child custody matter and this fact was not disclosed to the defendant during *voir dire*.

The record reveals that during a recess on the fourth day of petitioner's trial the Court heard a juvenile matter concerning the termination of parental rights and a child custody determination. Custody of the child in question was awarded to Joseph Earlis Melvin who was a juror in petitioner's trial. The State of Louisiana, in whose name the termination and custody proceedings had been filed, was represented by another member of the District Attorney's Office, Anthony L. Walker.[20] The Court ruled that it was coincidental that the matter arose during the course of the trial and found no connection between the two events. [rec. doc. 9-2, p. 8-9].

At the evidentiary hearing held on January 29, 2004, petitioner admitted that Assistant District Attorney Anthony "Tony" Walker was not the prosecutor in his case, but rather he was prosecuted by Assistant District Attorney Raymond Lejeune. [*Id*., p. 10]. In discussion with the court, petitioner argued that this issue was raised in petitioner's Motion for a New Trial which was heard and denied by the trial court after

---

[20]*State of Louisiana In the Interest of Mia Alexis Durgan*, Seventeenth Judicial District Court Docket No. J-4570.

the conclusion of petitioner's trial. [*Id.*, p. 15-18]. He also claimed that the issue was thereafter raised on direct appeal. However, petitioner did not have a copy of his appellate brief to support his argument. [*Id.*, p. 18]. The State responded arguing that because the appellate decision fails to address any such claim, the claim was not raised on direct appeal and was therefore waived. [*Id.*, p. 19- 20].

Ultimately, the district court concluded that the claim should have been raised on direct appeal. [*Id.*, p. 20]. However, without the benefit of petitioner's appellate brief, the court further noted that if the issue was raised, the Third Circuit chose not to rule on the issue, and if the issue was not raised, it was waived. [*Id.*, p. 22]. Review of petitioner's appellate brief reveals that petitioner did not, in fact, raise any claim based on alleged prosecutorial or juror misconduct, in the context of the denial of his Motion for New Trial or as a separate claim for relief. To the contrary, petitioner's challenge to the trial court's denial of a new trial was based solely on the recanting of testimony by witness Jackie Hayes. [rec. doc. 9-2, p. 3-28].

In his February 27, 2004 writ application to the Louisiana Third Circuit Court of Appeal, petitioner sought review of the trial court's ruling. [rec. doc. 9-5, p. 30]. On May 25, 2004, the Third Circuit refused to consider petitioner's juror misconduct claim because petitioner "failed to include a copy of the judgment rendered by the trial court denying [his] motion for a new trial and the hearing transcript of same ...." [*Id.*, p. 36].

Rather than providing the Third Circuit with the missing documentation required by that court for review of his prosecutorial and juror misconduct claim, petitioner instead sought review in the Supreme Court. [*Id.*, p. 39-50]. As with petitioner's newly discovered evidence claim, in his brief to the Louisiana Supreme Court, contrary to the requirements of Louisiana Supreme Court Rule X, Section 4, petitioner did not present any argument with respect to his misconduct claim. Rather, petitioner apparently attempted to adopt and incorporate the arguments contained in his briefs presented to the lower courts. [*Id.*].

In light of the above procedural history, it is clear that petitioner's prosecutorial and judicial misconduct claim is procedurally defaulted. The claim has never been properly presented to the Louisiana Supreme Court for review, and at this late date, review by that court is unavailable. *See* Louisiana Supreme Court Rule X, §5(a). The trial court declined to address the merits of petitioner's misconduct claim because petitioner failed to raise the issue on direct appeal following the denial of his motion for new trial.[21] The record before this court amply supports that finding; petitioner did not raise the claim in his brief to the Louisiana Third Circuit Court of Appeal. Moreover, it is clear that the Third Circuit did not address the merits of petitioner's misconduct claim because petitioner failed to abide by that court's procedural rules for proper presentation

---

[21] Although the district court judgment did not explicitly rely on LSA C.Cr.P. art. 930.4(C), it did so implicitly. The statute provides, "If the application [for post-conviction relief] alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."

of claims. *See* Uniform Rules, Courts of Appeal, Rule 4-5.[22] The Louisiana Supreme Court's writ denial did not specify reasons for its denial of review and therefore, it must be presumed that the Supreme Court likewise did not reach the merits of the claim.[23] *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Furthermore, given petitioner's failure to comply with the briefing requirements of Louisiana Supreme Court Rule X, Section 4, in accordance with the above analysis with respect to petitioner's newly discovered evidence claim, petitioner's misconduct claim was not "fairly presented" to the Louisiana Supreme Court for review. *See Wilder* and *Baldwin, supra.* For all of these reasons, the claim therefore remains unexhausted and procedurally defaulted.

As noted above, petitioner has been placed on notice that the procedural default doctrine may be applicable herein by virtue of the undersigned's January 27, 2006 Memorandum Order. [rec. doc. 15]. However, petitioner has failed to submit any response to this court's Order addressing this court's procedural default concerns. Thus, petitioner has not established cause for the default, nor has petitioner established that a miscarriage of justice will result if this claim is not addressed by this court. Accordingly, federal *habeas* review of petitioner's prosecutorial and juror misconduct claim is barred

---

[22]Uniform Rules, Courts of Appeal, Rule 4-5 sets forth the required contents of writ applications, mandating that the applicant provide a copy of the judgment, order or ruling complained of and a copy of the judge's reasons for judgment. *Id*. at 4-5(f) and (g).

[23] *See also* fn. 10, *supra.*

because the claim is procedurally defaulted.

For the reasons set forth above;

**IT IS RECOMMENDED** that the instant petition for federal *habeas corpus*
relief be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties
aggrieved by this Recommendation have ten (10) business days from service of this
Report and Recommendation to file specific, written objections with the Clerk of Court.
A party may respond to another party's objections within ten (10) days after being served
with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the
proposed legal conclusions reflected in this Report and Recommendation within ten
(10) days following the date of its service, or within the time frame authorized by
Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual
findings or the legal conclusions accepted by the District Court, except upon
grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79
F.3d 1415 (5th Cir. 1996).**

Lafayette, Louisiana, September 19, 2006.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE